STATE of Arkansas *v.* Michael PHILLIPPE

95-529                                         914 S.W.2d 752

Supreme Court of Arkansas
Opinion delivered February 12, 1996

*Murrey L. Grider*, for appellant.

*Steve Inboden*, for appellee.

ANDREE LAYTON ROAF, Justice. The appellant, State of Arkansas, Child Support Enforcement Unit (CSEU), appeals from the denial of a new trial in a child support action in which the state was ordered to refund all child support paid by appellee Michael Phillippe, following a blood test which excluded him as father of the minor child for whom the support had been paid. The appellant asserts that the trial court abused its discretion in failing to grant the new trial and that the trial court lacked jurisdiction to award a judgment against the state. We reverse the award of refund.

On February 21, 1992, appellant, as assignee of Glenda

Phillippe, an Aid for Families with Dependent Children (AFDC) recipient, filed a petition for child support alleging appellee was the father of Michael A. Phillippe, Jr., born on October 10, 1986. Appellee first answered pro se, admitting he was the father of the child and that he and the mother of the child, Glenda Phillippe, were married at the time. Appellee filed an amended answer through an attorney on August 10, 1992, denying that he was the biological father of Michael A. Phillippe, Jr., and demanded that a blood test be ordered by the court. The court entered an order for blood testing on September 29, 1992. On December 3, 1992, the trial court entered an order for support which recited that the defendant did not appear, although he was served with summons and his attorney had been notified of "this proceeding."

On February 25, 1993, the appellee, through a new attorney, moved to set aside the support order, alleging that his previous attorney had failed to advise him of the order for blood test and the notice of hearing. The support order was not set aside and appellant continued to collect support payments from appellee. On September 16, 1993, the court again ordered genetic testing to be performed on the parties. On January 13, 1994, appellee petitioned the court to enter a finding of no paternity and asked that all child support payments, past and future, be abated and all payments made to the Child Support Enforcement Unit from February 25, 1993, be refunded to appellee, because the mother and minor child had refused to submit to paternity testing. The appellant CSEU obtained a contempt citation against the mother on June 8, 1994 for refusing to obey the order for blood testing, the test was subsequently performed, and DNA test results concluded that appellee could not be the biological father of the child. The appellant CSEU then moved to dismiss the child support case against the appellee. The trial court dismissed the action against the appellee with prejudice and also ordered the appellant to refund all child support payments made by the appellee since November 22, 1992, in the sum of $5,939.00, plus clerk's cost totaling $48.00 and court costs totaling $65.77.

The appellant moved for a new trial pursuant to A.R.C.P. Rule 59 on the basis that the order for refund was "contrary to the preponderance of the evidence as well as contrary to the

law." This motion was denied.

On appeal, the appellant raises two arguments. Appellant first contends that it was abuse of discretion for the trial court to deny its motion for new trial. Appellant argues that appellee and his original attorney caused the support order to be entered by default. Appellant also submits that Ark. Code Ann. § 9-10-115(d) (Repl. 1993), found in the chapter dealing with paternity actions, only allows the court to relieve appellee of future obligations of support. Appellant further contends that it was merely a "conduit" for the support payments, and that Glenda Phillippe received all of the funds as support or AFDC payments.

We first note that the abstract and record do not contain any transcripts of the hearings conducted in this matter. However, from the pleadings, blood test results, and orders contained in the abstract, it appears that the following facts are not in dispute. A default order of child support was entered when neither appellee nor his attorney appeared at trial; the default order found appellee to be the father of his wife's minor child; appellant collected child support from appellee pursuant to the order until a court ordered paternity test revealed that he was not the biological father of his wife's child; the trial court entered an order dismissing the support action with prejudice and requiring appellant to refund to appellee the support money it collected.

Furthermore, after entry of the order, appellant moved for a new trial pursuant to Ark. R. Civ. P. 59(a)(6), which provides in material part:

> A new trial may be granted to all or any of the parties on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: . . . (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law. . . .

Arkansas Rule of Civil Procedure 59(f) further provides that "A motion for a new trial shall not be necessary to preserve for appeal an error which could be the basis for granting a new trial." We can thus review the proceedings as abstracted to determine if the decision of the trial court is clearly contrary to the preponderance of the evidence or is contrary to law.

Appellant argues that this court should follow the law as set forth in Ark. Code Ann. § 9-10-115(d), Modification of orders or judgments, which states in pertinent part:

> (a) The chancery court may, at any time, enlarge diminish, or vacate any such order of judgment in the proceedings under this section, except in regard to the issue of paternity, as justice may require and on such notice to the defendant as the court may prescribe.
>
> . . .
>
> (c)(1) Upon request for modification of the issue of paternity, *if the court determines that the original finding of paternity did not include results of scientific paternity testing*, consent of the natural parents, or was not entered upon any party's failure to comply with scientific paternity testing ordered by the court, the court shall direct the biological mother, the child, and the adjudicated father to submit to one (1) or more blood tests or other scientific examinations or tests as provided by § 9-10-108.
>
> . . .
>
> (d) If the court determines, based upon the results of scientific testing, that the adjudicated father is not the biological father, the court shall relieve the adjudicated father of any *future* obligation of support.[1]

(Emphasis added.) Appellant further argues that it was contrary to the law for the trial court to order all past child support under the judgment to be refunded, because Ark. Code Ann. § 9-10-115(d) allows only for relief of future support, and because the support had been properly paid by the appellee pursuant to a valid court order, and properly received and distributed by the State. We hold that the statute is applicable because, although appellant initially filed an action which only sought child support, the Phillippes were married, and the issue of paternity was raised by the appellee as a defense to the support action.

---

[1] We note that the legislature has clarified its intent that adjudications of paternity may be modified. *See* Act 1091 of 1995, codified in part at Ark. Code Ann. § 9-10-115(c)(2).

■   When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Arkansas Dep't of Human Serv.* v. *State*, 312 Ark. 481, 850 S.W.2d 847 (1993). Here, the statute plainly directs the court to relieve the alleged father of only future obligation of support.

Although we have not yet done so, other jurisdictions have considered the identical issue. In *State* v. *Wilmore*, 624 So.2d 30 (La. App. 1993), the defendant did not answer the petition for child support or otherwise appear, and a default judgment was entered declaring him the biological father of the minor child. The Louisiana Court of Appeals affirmed the lower court's decision not to order reimbursement of child support paid by the defendant after a blood test determined that the defendant could not be the father of the minor child. The court reasoned that when the child support payments were made, they were legally owed under a valid final judgment and therefore did not have to be reimbursed.

■   We conclude that the order of refund was contrary to the preponderance of the evidence and contrary to the law. The trial court was not authorized to relieve the appellee of past support by the applicable statutes, which specifically set out the course of action the trial court shall take when an adjudicated father is later determined not to be the biological father.

Because we reverse on the denial of the motion for new trial, it is not necessary that we decide the appellant's remaining argument raising the defense of sovereign immunity.

We reverse only that portion of the order of dismissal which provides that appellant refund the support payments and costs to appellee.

DUDLEY, GLAZE, and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. Glenda and Michael Phillippe were married but separated when Michael Jr. was born. The state later paid aid for dependent children (AFDC) payments on behalf of Michael Jr., and, on February 21, 1992, the state brought this action against Mr. Phillippe for reimbursement. Phillippe initially acknowledged Michael as his son, but later hired an attorney and denied paternity. He also demanded that the parties be administered a blood test. The chancellor

ordered tests, but the parties failed to comply. On November 21, 1992, the chancellor declared Phillippe to be Michael Jr.'s father and ordered him to pay $53.00 per week in child support. While Phillippe and his attorney failed to appear at the November 21 hearing, the chancellor found Phillippe had been summoned and his attorney notified of the proceeding. The chancellor's decisions announced on November 21 were included in his order entered on December 3, 1992.

On February 25, 1993, Phillippe and a new attorney filed a motion to set aside the chancellor's December 3rd order, alleging his previous attorney had not notified him of the November 21 hearing which resulted in his having been determined Michael Jr.'s father. On September 16, 1993, nearly seven months after Phillippe's motion to set aside the December 3rd order, the chancellor issued a new order directing blood tests and DNA typing be given the Phillippes and Michael Jr., and these test results excluded Phillippe as Michael Jr.'s father. This resulted in the chancellor entering a new order on February 11, 1995, finding Phillippe was not Michael Jr.'s father and directing the state to refund Phillippe the child support payments he had paid under the court's December 3rd order. The February 1995 order was entered over three years after the chancellor's original December 3, 1992 order which established Phillippe was the father.

The chancellor simply had no authority or power under our rules or statutory law to enter his February 1995 order. First, Phillippe filed no timely appeal from the chancellor's December 3, 1992 order, nor timely motion for new trial under ARCP Rule 59. Second, he filed no ARCP 60(b) motion which complied with the mistake or miscarriage of justice required to modify or set aside an order. *See Ingram* v. *Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993) ["miscarriage of justice" referred to in Rule 60(b) is a reference to the clerical errors or mistakes described in subsection (a)]. And when the chancellor failed to modify or vacate its December 3rd order within ninety days, he lost all power to act under Rule 60(b). *Cigna Ins. Co.* v. *Brisson*, 294 Ark. 504, 744 S.W.2d 716 (1988). Third, the chancellor here was left only with the general reservation of jurisdiction to modify his earlier December 3rd order pursuant to the special grounds set out in Rule 60(c), and none of these grounds were

alleged by Phillippe or shown to exist. Finally, I mention Ark. Code Ann. § 9-10-115 (Repl. 1993) which provides that, under certain circumstances, a chancellor may vacate a paternity order at any time. Whether or not § 9-10-115 might be in conflict with Rule 60 in some situations is insignificant here because § 9-10-115(c)(1) is entirely consistent in establishing the chancellor had no authority to enter his February 1995 order. That provision provides as follows:

> Upon request for modification of the issue of paternity, if the court determines that the original finding of paternity did not include results of scientific paternity testing, consent of the natural parents, *or was not entered upon any party's failure to comply with scientific paternity testing ordered by the court,* the court shall direct the biological mother, the child, and the adjudicated father to submit to one (1) or more blood tests or other scientific examinations or tests as provided by § 9-10-108.

(Emphasis added.)

In the present case, the chancellor entered his December 3, 1992 order declaring Phillippe to be Michael's father and did so only after having ordered genetic testing to be performed on the Phillippes and Michael Jr. Nowhere in the record is it reflected that any of the parties subjected themselves to the blood tests ordered by the chancellor prior to or by the time he held his hearing and entered his December 3rd order. Phillippe's attempt to blame his attorney does not relieve Phillippe in failing to be tested as ordered or excuse him from making an appearance at the court's November 11, 1992 hearing concerning the paternity and child support issues reduced to order on December 3rd. An attorney's acts of omission, as well as his commissions, are to be regarded as the acts of the client he represents. *Self* v. *Self*, 319 Ark. 632, 893 S.W.2d 775 (1995). In addition, this court has emphasized that it is the duty of a litigant to keep himself informed of the progress of his case. *United S. Assurance Co.* v. *Beard*, 320 Ark. 115, 894 S.W.2d 948 (1995).

In sum, the chancellor's December 3, 1992 order was a final order which was never appealed, nor timely or properly requested to be set aside. The chancellor simply had no authority to wait over three years to vacate the order legitimating Michael

Jr. and establishing child support for him. For the reasons above, the chancellor's February 25, 1995 order should be dismissed.

DUDLEY and CORBIN, JJ., join this dissent.