Stephen L. CLEMMONS *v.* OFFICE of CHILD
SUPPORT ENFORCEMENT

CA 00-393                                37 S.W.3d 687

Court of Appeals of Arkansas
Division IV
Opinion delivered February 21, 2001

*Kenneth A. Hodges*, for appellant.

*Phillips & Douthit*, by: *Michael Lamoureux*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Sheila and Stephen Clemmons were married in Missouri on March 4, 1971, and a son, Christopher Stephen Clemmons, was born of that union on June 5, 1973. The couple divorced in Missouri on October 16, 1974, and Sheila was awarded custody of Christopher, with Stephen ordered to pay seventy-five dollars per month in child support until Christopher entered the first grade, at which time support was to increase to one-hundred dollars per month. The Missouri court modified the custody and support provisions on May 7, 1976, awarding Sheila custody of Christopher for nine months during the school year and Stephen custody for the three summer months, with reasonable visitation allowed for the non-custodial parent. Stephen was ordered to pay seventy-five dollars per month in child support for each of the nine months Sheila had Christopher in her custody, and support was abated during his three months of custody.

On September 7, 1976, the Washington County, Arkansas, juvenile court placed custody of Christopher with Sheila, but quashed that order on September 9, 1976, and placed physical custody with Stephen. However, Sheila failed to appear at that hearing with Christopher, and Stephen would later learn that she

had taken him to California. On November 17, 1976, Stephen also obtained an order from Missouri placing temporary custody of Christopher with him.

A hearing was held in California in December 1977 on the issues of custody, visitation, and support. Both parties were present and represented by counsel. On March 27, 1978, an order was entered in the Superior Court of California in the County of Los Angeles acknowledging the Missouri decree as a valid foreign decree and giving it full faith and credit; finding a child support arrearage of $525 from June 1977 through December 1977; placing custody of Christopher with Sheila, with reasonable visitation awarded to Stephen; and modifying Stephen's child-support obligation from seventy-five dollars per month to one hundred twenty-five dollars per month as of January 1, 1978.

Christopher attained the age of eighteen (18) years on June 5, 1991. In 1993, Sheila assigned her rights to the state of Missouri for assistance in collecting the child support arrearages. After locating Stephen in Arkansas, Missouri initiated an interstate action to enforce Stephen's child-support obligation under the 1978 California award. On February 6, 1995, the Arkansas Office of Child Support Enforcement ("OCSE") filed a request for registration of the California order and a petition to reduce Stephen's unpaid child support to a judgment.

On November 14, 1995, the Pope County Chancery Court entered the California order as a foreign decree. On January 22, 1998, the chancellor entered an order finding that the assignment by Sheila to OCSE was proper; that the statute of limitations was ten years unless the action was filed prior to the child attaining twenty-four years of age, and then all arrearages would be collectable; that Arkansas law controlled; but that OCSE and Sheila were both estopped from obtaining a judgment and/or attempting to collect any child support arrearages based upon the fact that Sheila had wilfully concealed Christopher from his father.

OCSE appealed this order, and this court reversed and remanded the case, holding that the chancellor directly contravened the purpose of the Uniform Interstate Family Support Act ("UIFSA") when he refused to allow the collection of past-due support based upon a failure to allow visitation, and ordering that

the chancellor "determine the proper amount of child-support arrearage due pursuant to the March 27, 1978, California order, taking into consideration the applicable statute of limitations and the propriety of the mother's assignment." *Office of Child Supp. Enforcem't v. Clemmons*, 65 Ark. App. 84, 984 S.W.2d 837 (1999).

Upon remand, without elaborating his reasons, the chancellor made the conclusory determination that, "taking into consideration the applicable statute of limitations and the propriety of the mother's assignment, it is hereby found that the Defendant's child support delinquency to be [sic] the sum of $20,775 as of July 28, 1999." Stephen now appeals that ruling, arguing that the chancellor erred (1) in not considering the propriety of Sheila's assignment of child support to OCSE pursuant to the instructions of this court on remand, and (2) in calculating the child-support arrearage. We affirm the chancellor's decision.

■ The appellate courts review chancery cases *de novo* and will not reverse a finding of fact by the chancery court unless it is clearly erroneous. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000). However, we do not defer to a chancery court's conclusion on a question of law; if the chancery court erroneously applied the law and the appellant suffered prejudice as a result, we will reverse the chancery court's erroneous ruling on the legal issue. *Oliver v. Oliver*, 70 Ark. App. 403, 19 S.W.3d 630 (2000).

Appellant's first issue on appeal is the propriety of Sheila's assignment of child support arrearages to OCSE. He argues that because Christopher was no longer a minor at the time Sheila assigned her rights to OCSE, it had no authority to pursue collection because Sheila no longer had any authority to pursue any child-support arrearages. Arkansas Code Annotated section 9-14-236(b) & (c) (Repl. 1998) provides:

> (b) In any action involving the support of any minor child or children, the moving party shall be entitled to recover the full amount of accrued child support arrearages from the date of the initial support order until the filing of the action.

(c) Any action filed pursuant to subsection (b) of this section may be brought at any time up to and including five (5) years beyond the date the child for whose benefit the initial support order was entered reaches the age of eighteen (18) years.

"Moving party" is defined as a custodial parent; any person or agency to whom custody of a minor child has been given; a minor child through his guardian or next friend; a person for whose benefit the support was ordered, within five years of obtaining majority; or OCSE if the person who has custody of the minor child is or has been receiving Aid to Families with Dependent Children or has contracted with OCSE for the collection of support. Ark. Code Ann. § 9-14-236(a)(2) (Repl. 1998).

■ This statute appears to allow a moving party, which includes a custodial parent, to pursue child-support arrearages until the child for whose benefit the support order was entered attains the age of twenty-three. Although neither this court nor our supreme court has directly addressed the issue, *Cole v. Harris*, 330 Ark. 420, 953 S.W.2d 586 (1997), and *Sanderson v. Harris*, 330 Ark. 741, 957 S.W.2d 685 (1997), seem to imply that a custodial parent may file a petition to collect child-support arrearages after the child has attained the age of majority but prior to his twenty-third birthday.

■ In *Cole*, the supreme court affirmed a chancellor's finding that a mother's action to recover child-support arrearages brought on behalf of her adult child was barred; however, the basis for the decision was not because the mother could not pursue a claim on behalf of her adult child, but rather because she did not file the claim prior to her son turning twenty-three and she was therefore barred by the statute of limitations. In recounting the applicable statutes of limitation, the court stated, "The effect of the legislature's action in adopting Act 870 of 1991 was to expand the time in which a cause of action could be maintained, thereby affording a greater opportunity for a *parent or child* to collect child-support payments than the ten-year statute that it repealed." 330 Ark. at 425, 953 S.W.2d at 588 (emphasis added). Likewise, in *Sanderson*, which involved the same obligor as in *Cole*, the supreme court held that the mother's attempts to enforce child support arrearages for her adult children were barred by the statute of limitations because the children were past the age of twenty-three. The decision was not based on the mother having no authority to bring the action

after the children had attained the age of majority. Because the holdings in *Cole* and *Sanderson* imply that a custodial parent may pursue child-support arrearages for adult children who have not yet attained the age of twenty-three, we find that Sheila's assignment to OCSE was appropriate because Christopher had not yet attained the age of twenty-three at the time Sheila made the assignment nor at the time OCSE filed the action to recover the arrearages.

■ Having determined that Sheila's assignment to OCSE was proper, we turn to the question of what portion of the arrearages are collectable. Because this action arose under the Uniform Interstate Family Support Act (UIFSA), we must decide whether the Arkansas or California statute of limitations is applicable. In UIFSA arrearage proceedings, the applicable statute of limitations is the longer of the statute of limitations under Arkansas law or the state issuing the support order. Ark. Code Ann. § 9-17-604(b) (Repl. 1998).

■ Our supreme court set out the history of the Arkansas statute of limitations for child support in *Johnson v. Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992):

> Prior to 1989, the statute of limitations for child support arrearages was five (5) years. In 1989, the General Assembly changed the limitation to ten (10) years. We held the 1989 amendment did not apply retroactively. The General Assembly wanted to further enlarge this statute of limitation, so it passed Act 870 of 1991, which amends Ark. Code Ann. 9-14-105 & 9-14-236, and provides child support actions can be "brought at any time up to and including five (5) years beyond the date the child for whose benefit the initial support order was entered reaches the age of eighteen (18) years." The 1991 act also provides that the enlarged limitation "shall retroactively apply to all child support orders now existing."
>
> . . .
>
> We have long held that the legislature has the power to amend statutes of limitation affecting causes of action which are not yet barred. . . . However, we have long taken the view, along with a majority of the other states, that the legislature cannot expand a statute of limitation so as to revive a cause of action already barred.

308 Ark. at 202-03, 823 S.W.2d at 884-85.

At the time the current statute was enacted on March 29, 1991, all claims for child support arrearages that had accrued prior to March 29, 1986, were barred under the prior five-year statute of limitations and cannot now be revived by the new statute of limitations. However, because the five-year limitation period had not yet run on any arrearages accrued after March 29, 1991, those arrearages are governed by the 1991 amendment. *See Branch v. Carter,* 326 Ark. 748, 933 S.W.2d 806 (1996).

In the present case, if the Arkansas statute of limitations governs, then appellee is entitled to recover all arrearages that accrued between March 29, 1986, and June 5, 1991, Christopher's eighteenth birthday. This is a period of approximately sixty-two months, which would translate into a recoverable arrearage of $7,750.

However, if California's statute of limitations provides a longer period than Arkansas, then it is applicable. Since 1993, section 4502 of the California Family Code has provided that a judgment for child support "is enforceable until paid in full and is exempt from any requirement that judgments be renewed." Cal. Fam. Code § 4502 (West 1994).

■ Prior to 1993, pursuant to former Cal. Fam. Code § 4383, which was repealed at the time Cal. Fam. Code § 4502 became effective, a judgment for child support was enforceable by writ of execution without prior court approval until five years after the child reached majority, and thereafter only as to amounts that were not more than ten years overdue; beyond those time frames, the trial court had the discretion to determine whether to allow enforcement of the judgment. *In re Marriage of Dancy,* 98 Cal. Rptr. 2d 775 (2000). However, the above-mentioned statute was not considered by the California courts to be a statute of limitations because it did not set forth a time after which a family law judgment was unenforceable or after which an action thereon could not be maintained; rather, it merely provided a procedure for enforcement by execution without the necessity of obtaining prior court approval. *In re Marriage of Wight,* 264 Cal. Rptr. 508, fn. 4 (1989). Nevertheless, in *Wight, supra,* the California Court of Appeals held that if an action was brought prior to five years after the child attained the age of majority, all past due support was collectable by writ of execution without prior court approval.

In the present case, based upon the holding in *Wight*, Sheila could have filed a writ of execution in California and collected all child-support arrearages without court approval. Because California allows for collection of the entire arrearage amount, the law of that state is applicable in this UIFSA action, and the entire arrearage of $20,775 awarded by the trial judge in this case is recoverable.

Affirmed.

BIRD and VAUGHT, JJ., agree.